Patrick J. Murphy, WSB No. 5-1779
WILLIAMS, PORTER, DAY & NEVILLE, P.C.
159 N. Wolcott, Ste. 400
P.O. Box 10700 (82602)
Casper, WY 82601
Ph.: 307-267-0700
Email: pmurphy@wpdn.net

*Attorney for Defendant Dan Schwab*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| JOE RICKETTS, HUGO ENTERPRISES, LLC, RIPARIAN LANDS, LLC, RIPARIAN LANDS II, LLC, RIPARIAN LANDS III, LLC, and RIPARIAN LANDS 1V, LLC, | |
| Plaintiffs, | Civil No. 1:26-cv-00264-SPK |
| vs. | |
| MORGAN FISCHER, LONG ISLAND BUYERS REALTY LLC, DAN SCHWAB, DEADMAN RANCH, LLC, AND GREYS RIVER MEADOWS, LLC, | |
| Defendants. | |

---

**DEFENDANT DAN SCHWAB'S MOTION REQUESTING AN ORDER THAT PLAINTIFFS PROVIDE A "RICO CASE STATEMENT" OF THE PARTICULARS OF THEIR TWO RICO CLAIMS BEFORE DEFENDANTS ARE REQUIRED TO ANSWER OR OTHERWISE PLEAD TO PLAINTIFFS' COMPLAINT**

---

COMES NOW Defendant Dan Schwab, through his counsel, Patrick Murphy, and hereby moves the Court for its Order requiring Plaintiffs to provide a "RICO Case Statement" of the particulars of their two RICO claims before requiring Defendants to answer or plead to Plaintiffs' Complaint. Patrick Murphy conferred with Plaintiffs' counsel, John McHugh, by phone and by email on October 30, 2026 to ask whether Plaintiffs would object or consent to this Motion. Plaintiffs' counsel opposes this Motion.

## I. INTRODUCTION

Uber-wealthy Plaintiff Joe Ricketts and his five limited liability company Plaintiffs, allege two RICO claims: an 18 U.S.C. §1962 (c) claim and an 18 U.S.C. §1962(d) claim (which makes it illegal "for any person to conspire to violate any of the provisions of subsection (a), (b) or (c) of 18 U.S.C. §1962"). "By its terms, §1962(d) requires that a plaintiff must first allege an independent violation of Subsections (a), (b), or (c) in order to plead a conspiracy claim under subsection (d)." *See Tal v. Hogan*, 453 F.3d 1244, 1270 (10th Cir. 2006); *and see U.S. v. Hampton*, 786 F.2d 977, 978 (10th Cir. 1986) ("The ***object*** of a RICO ***conspiracy claim*** must be to violate a substantive RICO provision.") (emphasis added); *and see Condict v. Condict*, 826 F.2d 923, 927 (10th Cir 1988) ("[A]ny claim under §1962(d) based on conspiracy to violate the provisions of 18 U.S.C. §1962 (a), (b), or (c) must necessarily fail if the substantive claims are themselves deficient.").

Contrary to Plaintiffs' Complaint allegations, there was no fraud, no enterprise, no racketeering activity, let alone a pattern of racketeering activity, there are no predicate acts, and there was never an agreement among any of the five Defendants to do anything wrong or hurtful to Joe Ricketts or any of his companies. Plaintiffs' allegations of secret agreements between any of the Defendants to financially hurt, harm or take financial advantage of Mr. Ricketts are fantasy. They are non-events. They never happened. Those specific issues will be addressed in a separate motion under Rule 12(b)(6). For this Motion, however, the point is narrower: the Complaint is so vague and so dependent on allegations made “upon information and belief” that Defendants cannot reasonably frame a response or identify the particular conduct for which each Defendant is alleged to be liable.

By way of background, what actually happened here is that after Plaintiffs purchased these various Deadman Ranch and Greys River Meadows’ properties in Lincoln County,

Wyoming in 2022-2023, Mr. Ricketts then abandoned his interest in these properties and turned his attention, wealth, and motivation to purchasing and developing his Granite Creek property and project near Bondurant, Wyoming (where Mr. Ricketts plans to develop a grand resort), a property Dan Schwab helped facilitate for Mr. Ricketts for no charge.[1]

The Court should order Plaintiff Mr. Ricketts and the other five Plaintiffs to provide Defendants with a "RICO Case Statement" setting forth all the details and particulars of Plaintiffs' RICO claims ***before*** Defendants respond to or answer Plaintiffs' Complaint. Plaintiffs' Complaint demonstrates the necessity of a RICO Case Statement. Before Plaintiffs ever assert their legal claims in their Complaint, fifty-two (52) times they assert alleged facts "upon information and belief." *See Complaint,* ECF 1, at ¶¶ 25-158. Such assertions are something far less than an averment of the necessary facts to support RICO Claims.[2] *See Complaint*, ECF 1, at ¶¶ 39-105.

---

[1] His Granite Creek property acquisition gave Mr. Ricketts resort development land without needing a federal land exchange. The Forest Service exchange thus became unnecessary to achieve a commercial resort. Mr. Ricketts made a deliberate business decision to abandon any USFS exchange and pivot from his recently-purchased Renegade properties to Granite Creek instead.

[2] Here are illustrative examples of Plaintiffs' "Upon information and belief" assertions:

> 39. ***Upon information and belief***, in late 2020 Fischer was desperate for a solution to his money problems and saw his relationship with Ricketts as a potential source of financial exploitation. Upon information and belief, Defendant Fischer determined that the land he was tasked with acquiring for the potential federal land swap could serve as the basis to defraud Ricketts. Defendant Fischer began the process of getting the word out in the Western Wyoming real estate market that Ricketts was interested in a land swap. In his desperation to relieve his financial strain, he found a willing partner in Dan Schwab.
>
> 53. ***Upon information and belief***, it was in this timeframe that Defendants Fischer and Schwab developed their intricate scheme to capitalize on Plaintiffs' interest in a land swap and Plaintiffs' trust and confidence in Fischer. Defendant Fischer assured Defendant Schwab he could deliver Plaintiffs' agreement to purchase the subject land at the price he and Schwab agreed to. Defendant Fischer informed and assured Defendant Schwab that all he would need to get Ricketts's agreement to their exaggerated sales price was an appraisal.
>
> 55. ***Upon information and belief***, and unbeknownst to Plaintiffs, Defendants Schwab and Fischer had intentionally plotted to break the sale of the properties into multiple transactions, and sequence those transactions in order to serve numerous objectives, including: (i) paying off various long-standing debts on various properties or to business partners and affiliates;

*See, e.g.*, *McDonald v. Heaton*, 2006 WL 1704604 at *3 (W.D. Okla. June 16, 2006) ("private claims alleging fraud under the RICO statute are subject to the same heightened pleading standard imposed on fraud claims generally under Rule 9(b), Fed.R.Civ.P." and "therefore, if plaintiff intends to pursue a private RICO Claim for fraud against defendants Lee and Coyle, plaintiff must file, within twenty days of the date of this order, a RICO case statement which meets the following requirements.").

## II. ARGUMENT

It is unlawful under 18 U.S.C. §1962(c) of the RICO statute:

> for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate directly or indirectly in the conduct or participate, directly or indirectly, in the conduct of such enterprises' affairs through a pattern of racketeering activity or collection of unlawful debt.

---

> (ii) facilitating sales of other properties by business partners or affiliates who had grown dissatisfied with the failed development and inability to sell; (iii) getting other business partners "out of the way;" and (iv) maximizing the financial benefit to Defendants over any of the other sellers of the Renegade lots.
>
> 65. ***Upon information and belief***, Schwab and Fischer directed [appraiser] Smith to reach specific value ranges for each of the lots he appraised in order to serve their personal and financial objectives.
>
> 104. ***Upon information and belief***, Defendants Schwab and Fischer therefore conspired to assign a value of $25 million to the Renegade lots owned by Greys River Meadows, while assigning a value of $30 million to the Renegade lots owned by Deadman Ranch (both those it had sold in Riparian I, as well as those it still owned); [and]
>
> 105. They then embarked on a scheme to convince Plaintiffs to: (1) pay their fixed price of $55 million to $60 million for the remaining lots at Renegade; and (2) agree to purchase not just the Renegade lots owned by Greys River Meadows but also its other assets in Riparian II, per Michael Call's insistence. (emphasis added).

None of these "upon information and belief" assertions are factual or true (as Defendants will later show). What is important here, for this Motion, is that these allegations are some of the core alleged facts for Plaintiffs' two RICO claims. They are the alleged core facts for Plaintiffs' fanciful theory that "Plaintiffs overpaid for the Riparian Land by tens of millions of dollars." *Complaint* at ¶ 180. And such core factual assertions must be stated with more certainty and speculation than "upon information and belief."

*Resolution Trust Corp. v. Stone*, 998 F.2d 1534, 1540-41 (10th Cir. 1993). To prove a claim under §1962(c), Plaintiff must show Defendants (1) participated in the conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity. *Phelps v. Wichita-Eagle-Beacon*, 886 F.2d 1262, 1263 (10th Cir. 1989) (citing *Sedima*, *S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S. Ct. 3275, 3285, 87 L. Ed.2d 346 (1985)).

The Tenth Circuit addressed what is needed to satisfy the requirement of a *pattern* of racketeering activity.

> As a final point, we question whether Plaintiffs' allegations of predicate acts satisfied the requirement of "a pattern of racketeering activity." A "pattern" of racketeering is defined as "at least two acts of racketeering activity, which occurred within ten years" of each other. 18 U.S.C. § 1961(5). However, because "RICO is not aimed at the isolated offender," *Resolution Trust Corp.,* 998 F.2d at 1544, proof of two or more predicate acts are not sufficient to prove a pattern unless there is a relationship between the predicate acts and a threat of *continued activity*. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989); *Duran v. Carris,* 238 F.3d 1268, 1271 (10th Cir. 2001). Continuity of threat requires both proof of a series of related predicates extending over a substantial period of time," as well as a "showing that the predicates themselves involve a distinct threat of long-term racketeering activity . . . *Resolution Trust Corp.*, 998 F.2d at 1543 . . . Here, none of the Appellants specifically allege a continuing threat by the Developers and Douglas to control the Renewal Authority and the city council. The allegations are confined to the award of one, albeit large, development contract to the Developers. There is no reason to believe that the grant of one development contract acquired through misrepresentation of financial backing and partnership constitutes "a distinct threat of long-term racketeering activity." *Id.* at 1543.

*Tal*, 453 F.3d at 1267-68.

In *Johnson v. Heath*, 56 F.4th 851 (10th Cir. 2022), the court held the defendants' actions as alleged did not plausibly violate the RICO statute. The court identified the "racketeering scheme Plaintiffs call 'burning the station.'" *Johnson*, 56 F.4th at 857. Here, Plaintiffs characterize the alleged scheme as misrepresenting the market value of the Riparian Land, all for the purpose of Defendants' personal and financial gain. *See Complaint*, ECF No. 1, at ¶ 186. In *Johnson*, Judge Carson first noted that:

> To plead a valid RICO claim, a plaintiff must plausibly allege that a defendant "(1) conducted the affairs (2) of an enterprise (3) through a pattern (4) of racketeering activity." *George v. Urb Settlement Servs.,* 833 F.3d 1242, 1248 (10th Cir. 2016)."Racketeering activity" consists of the criminal offenses listed in 18 U.S.C. §1961(1), and a "pattern" requires at least two racketeering acts committed within ten years of each other. 18 U.S.C. §1961(5).

*Johnson*, 56 F.4th at 858. Judge Carson then observed "a RICO pattern requires that the racketeering predicates relate to each other and amount to a threat of continued racketeering activity. No pattern exists without this continuity plus relationship." *Id.* at 858-59. The court found that "Plaintiff failed to allege that 'burning the station' presents Defendants' way of conducting business or that it threatens future repetition.” *Id.* at 860. Observing that "RICO targets long-term racketeering conduct," and that "we thus consider two factors when determining the existence of closed-ended continuity – the duration of the related predicate acts and the extensiveness of the racketeering scheme." *Id.* at 860. Judge Carson summarized the rationale for dismissing the plaintiff's RICO Claim as follows:

> Although establishing continuity does not require the existence of multiple racketeering schemes, the number of schemes is still "highly relevant." *H.J. Inc.,* 492 U.S. at 240. Without a threat of continued illegal activity, a scheme rarely supports finding continuity. *See Sil-Flo,* 917 F.2d at 1516 ("While a single scheme may suffice in some instances, here there is simply no indication of a threat of continuing illegal activity."). And a single scheme even less likely supports a continuity finding when the scheme targets only "one discrete goal." *See id.* Plaintiff alleged only a single scheme with the discrete goal of "burning" the Wells station – inflating its value and dumping it off on an unsuspecting buyer. Thus, the nature of the alleged RICO scheme does not support a finding of extensiveness.

*Id.* at 862.

In *Boone v. Carlsbad Bancorporation, Inc.*, the court held that the complaint failed the continuity requirement specifically because it alleged a closed-ended series of predicates forming one scheme, the transfer of debt to accomplish one discrete goal, a merger directed at a finite group of CNB shareholders, with no potential to extend to other persons or entities. *See Boone v. Carlsbad Bancorporation, Inc.*, 972 F. 2d 1545, 1555 (10th Cir. 1992). The court affirmed dismissal even

while recognizing that more than one scheme was not required. *See id.*

Plaintiffs' Complaint must allege a sufficiently extensive scheme to constitute the long-term criminal activity at which RICO is directed. Plaintiffs' pleading is vulnerable under a "close-ended continuity" standard because, as alleged on the face of the Complaint, the "scheme" had only one target – Ricketts. Although five related plaintiffs are named, the alleged scheme had *one* economic target – Plaintiff Joe Ricketts. Practically, the face of the Complaint describes a finite, three year "scheme," organized and targeting one investor, and a single land-exchange project, not a broad scheme directed toward multiple victims. The Complaint alleges that lenders' debts were extinguished with transaction proceeds, but does not explain how Defendants allegedly defrauded or injured the lenders, and by such fails to identify another victim. *See Complaint*, ECF 1, at ¶ 190. Further, the Forest Service allegedly rejected the contemplated exchange as a "non-starter," rather than being subjected to the "scheme." Equally, therefore, the Forest Service cannot be framed as a "victim." Thus, even when framed to create a larger number of victims, allegations still center on Ricketts and his related entities as the scheme's only target. The Tenth Circuit held that a closed series of predicates directed toward one discrete transactional objective, with no potential to extend to others, does not establish continuity (even though more than one scheme is not formally required). *See Boone*, 972 F.2d at 1556. It has likewise affirmed dismissal where the alleged predicates concerned one property dispute, one individual, and the discrete goal of obtaining approval for a subdivision. *See Duran v. Carris*, 238 F.3d 1268, 1270 (10th Cir. 2001).[3] For this Motion, the Court

---

[3] The Tenth Circuit also observed that where the scheme has a limited purpose, most courts have found no continuity.

> Where the scheme has a limited purpose, most courts have found no continuity. *See Sil-Flo*, 917 F.2d at 1516 (holding no closed-ended continuity where single scheme directed at "one discrete goal" and one victim); *Thompson v. Paasche*, 950 F.2d 306, 311 (6th Cir. 1991) (holding no continuity where the defendant had nineteen lots to sell, and once he sold all of the lots, the scheme was over).

need not decide the continuity question, but the Court should require Plaintiffs to identify the specific predicate acts, the specific victims, and the time span on which their pattern allegation rests, so that the requirement can be meaningfully tested.

Specific to RICO claims, under F.R.C.P. 9(b), Plaintiffs must sufficiently allege each element of a civil RICO violation and its predicate acts of racketeering with particularity, a requirement justified by the "threat of treble damages and injury to reputation." *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 989 (10th Cir. 1992) (citing *Cayman Exploration Corp. v. United Gas Pipe Line,* 873 F.2d 1357, 1362 (10th Cir. 1989)); *see also Arena Land & Inv. Co. v. Petty*, 906 F.Supp. 1470, 1475 (D. Utah 1994) ("who, what, when, where and how" of the alleged fraud). Moreover, Plaintiffs cannot merely allege the existence of an enterprise and the occurrence of acts by an enterprise, but instead that ***each defendant*** participated in the operation or management of the enterprise itself. *See George v. Urban Settlement Servs*., 833 F.3d 1242, 1251 (10th Cir. 2016). In their Complaint, Plaintiffs globally attempt to impute the investment, control of, or conduct of other defendants to others when attempting to establish specific elements. Plaintiffs' allegations may describe the asserted enterprise at a general level, but they do not eliminate the separate requirement to plead how ***each defendant*** itself participated in operating or managing that enterprise.

**A. Plaintiffs' Defective Pleading.**

Plaintiffs' Complaint insufficiently alleges continuity. The Complaint must allege a sufficiently extensive scheme to constitute long-term criminal activity at which RICO is directed. The Complaint must also sufficiently connect each defendant[4] to the alleged RICO violation rather

---

*Resolution Trust Corp. v. Stone*, 998 F.2d at 1545.

[4] In Plaintiffs' Complaint, they typically lump all Defendants together without specifying what each defendant did. *See, e.g.*, *Complaint*, ECF 1, at ¶ 109 ("Defendants retained another unqualified appraiser . . .") and at ¶ 90 ("Defendants' racketeering activity also posed a threat of continuing into the future . . .").

than lumping defendants together on collective allegations concerning the enterprise. Merely collectivizing "defendants" in a civil RICO claim does not adequately identify the conduct for which ***each defendant*** allegedly bears RICO responsibility.

Caselaw instructs that, under Rule 9(b), F.R.C.P., a plaintiff alleging mail or wire fraud must plead the who, what, when, where, and how of the fraud, including the contents of the representation, the speaker's identity, and the representation's circumstances. *Clinton v. Sec. Ben. Life Ins. Co.*, 63 F.4th 1264, 1277 (10th Cir. 2023). Here, Plaintiffs allege the underlying predicate acts as mail fraud and wire fraud including the following: Transmitting fraudulently constructed appraisals via electronic mail on or around May 26, 2021, August 25, 2022, September 4, 2023 and September 12, 2023; (b) Emailing fraudulent information to Ricketts on or about April 26, 2021, May 21, 2021, July 27, 2021, October 21, 2021, November 19, 2021, December 15, 2021, January 20, 2022 and May 13, 2022; (c) Using wires to receive the proceeds of their fraudulent conduct on or about January 21, 2022, January 26, 2022, August 11, 2022, September 2, 2022, September 14, 2022, September 22, 2023, September 29, 2022, and October 9, 2023; and (d) Upon information and belief, wiring fraudulently obtained proceeds, or kickbacks, to various participants in the Riparian Transactions. *See Complaint*, ECF 1, at ¶ 188.

While Plaintiffs allege with particularity the dates and some of the potential contents of these false statements, very limited information and particularity is provided about each specific defendant's activity and the consequences of that activity. Plaintiffs identify dates and, for some communications, the general subject matter of the alleged misrepresentations, but they provide limited particularity regarding who made or caused each communication, what each communication said, where it was sent, which defendant participated in it, and how it furthered the alleged scheme.

---

Dan Schwab never retained or hired any of the appraisers in Plaintiffs' Complaint.

The Complaint identifies four dates on which allegedly fraudulently constructed appraisals were transmitted, eight dates on which “fraudulent information” was allegedly emailed to Ricketts, and several dates on which unidentified defendants allegedly used wires to receive proceeds. *See Id.* But the list generally attributes those acts to Defendants collectively, without identifying the sender and recipient of each communication, its specific contents, the defendant responsible for it, or its function in executing the alleged scheme. *See Id.*

The listed e-mails suffer from the same defect. The Complaint alleges generally that Morgan Fischer sent e-mails on April 26, May 21, October 21, November 19, and December 15, 2021, and January 20 and May 13, 2022, containing knowing misrepresentations, but it does not state the contents of each identified e-mail or explain how each statement was false. A communication that appears to be an ordinary business communication does not become a fraud predicate merely because it happens during the time of the alleged scheme—the Complaint must explain both how the communication was fraudulent and how it specifically furthered the scheme. Plaintiffs' generalized characterization of these e-mails as “fraudulent information” does not provide the required explanation. Nor is it enough to allege that Defendants received or later distributed proceeds by wire. And its bare allegation, made “upon information and belief,” that unidentified proceeds or kickbacks were wired to unspecified “participants” does not identify any transfer, participant, amount, date or factual basis for that belief.

**B. The Court Should Order Plaintiffs to Provide a RICO Case Statement.**

Just like the courts did in *Burbank v. U.S. District Court,* 2008 WL 170691 at *3-5 (D. Utah Jan. 16, 2008) and *McDonald v. Heaton*, 2006 WL 1704604 at *4 (W.D. Okla. June 16, 2006), this Court should order Plaintiffs to file, within twenty (20) days of the date of its order, a RICO Case Statement answering, with particulars, all the questions on **"Exhibit A"** to this Motion. *See McDonald* at *3 ("The RICO case statement shall include the facts plaintiff relies on to initiate this

complaint as a result of the 'reasonable inquiry' required by Rule 11, Fed.R.Civ.P."); *and see Burbank* at *3 ("Consequently, to facilitate the court's future course of proceedings in this action, the Uintah County defendants are directed to file, not later than February 19, 2008, a RICO Case Statement"). *See Tal*, 453 F.3d at 1262, n. 18.

## CONCLUSION

Defendant Dan Schwab respectfully asks the Court order Plaintiffs to provide their RICO Case Statement answering all of the questions on **"Exhibit A."** Defendant Dan Schwab also asks the Court to extend Defendants' November 16, 2026 deadline to answer or respond to Plaintiffs' Complaint until twenty (20) days after Plaintiffs provide Defendants and the Court with their RICO Case Statement. A [proposed] order is attached for the Court's consideration.

DATED this 30th day of October, 2026.

DAN SCHWAB

Defendant

/s/ Patrick J. Murphy

Patrick J. Murphy, WSB No. 5-1779
WILLIAMS, PORTER, DAY & NEVILLE, P.C.
159 N. Wolcott, Suite 400
P. O. Box 10700
Casper, Wyoming 82602
Ph. 307/265-0700
pmurphy@wpdn.net

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that a true and correct copy of the foregoing document was delivered to the Court via the CM/ECF System and served upon counsel via CM/ECF electronic transmission this 30th day of October, 2026.

**January D Allen**
**Daniel Reilly**
**John McHugh**
**Amy Jones**
FENNEMORE CRAIG, P.C.
3615 Delgany St, Ste. 1100
Denver, CO 80216
Ph.: 303-291-3200
Fax: 303-291-3201
Email: jallen@fennemorelaw.com
dreilly@fennemorelaw.com
jmchugh@fennemorelaw.com
ajones@fennemorelaw.com

*Counsel for All Plaintiffs*

[ ] U. S. Mail (prepaid)
[ x ] CM/ECF Electronic Transmission
[ ] Overnight Delivery
[ ] Hand Delivery
[ ] Electronic Mail

**Nathan A Nicholas**
**Elise Balin Hill**
NICHOLAS LAW PC
1815 Evans Avenue
Cheyenne, WY 82001
Ph.: 307-264-5339
Email: nate@nicholas.law
elise@nicholas.law

*and*

[ ] U. S. Mail (prepaid)
[ x ] CM/ECF Electronic Transmission
[ ] Overnight Delivery
[ ] Hand Delivery
[ ] Electronic Mail

**Philip Andrew Nicholas**
NICHOLAS & TANGEMAN
170 North 5th Street
P O Box 928
Laramie, WY 82073-0928
Ph.: 307-742-7140
Fax: 307-742-7160
Email: nicholas@wyolegal.com

*Counsel to Defendant Morgan Fischer and Long Island Buyers Realty LLC*

[ ] U. S. Mail (prepaid)
[ x ] CM/ECF Electronic Transmission
[ ] Overnight Delivery
[ ] Hand Delivery
[ ] Electronic Mail

/s/Patrick J. Murphy
Patrick J. Murphy